IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCLOUD TECHNOLOGIES (USA) INC., MCLOUD TECHNOLOGIES SERVICES INC., MCLOUD TECHNOLOGIES CORP., <br><br> Plaintiffs, <br><br> *v.* <br><br> ATB FINANCIAL and FIERA PRIVATE DEBT FUND GP INC., <br><br> Defendants. | Civil Act. No. 1:25-cv-00692-RGA——————— <br><br> JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiffs mCloud Technologies (USA) Inc., mCloud Technologies Services Inc., and mCloud Technologies Corp. (collectively "mCloud" or "Plaintiffs"), by their attorneys and for their complaint against ATB Financial ("ATB") and Fiera Private Debt Fund GP Inc. ("Fiera") (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action based on the Defendants' ~~breach~~ abuse of their obligations under the various loan agreements to not unreasonably withhold consent for a transaction which was a necessary prerequisite for Plaintiffs to complete (the "prerequisite transaction") a larger change of control transaction. Plaintiffs seek to recover damages resulting from Defendants' tortious interference with the proposed transaction that resulted in both transactions being sabotaged by the conduct of Defendants. Despite receiving Plaintiffs' repeated requests for approval of the proposed prerequisite transaction, and despite repeated warnings that failure to complete that prerequisite transaction would place the change of control transaction in jeopardy, Defendants (i) repeatedly failed to timely grant approval for the proposed prerequisite transaction on commercially reasonable terms, as required by the loan agreements; (ii) failed to

respond to basic requests for information critical to Plaintiffs' sales efforts and its overall business strategy; and (iii) imposed commercially unreasonable conditions on pending sales, in violation of the loan agreements. Defendants' acts and omissions have directly harmed Plaintiffs' financial condition, helped to create conditions under which Plaintiffs could not operate in a financially viable manner, and unfairly placed Plaintiffs in a position where its assets have materially degraded in value. Subsequently, Plaintiffs brought an asset sale transaction for approval to Defendants. Rather than timely review the asset sale transaction and approve it, Defendants yet again abused their status as debt holders, improperly withheld approval, and caused the offer to expire – thus sabotaging another potential asset sale and causing substantial damage to Plaintiffs.

## THE PARTIES

1. mCloud Technologies (USA) Inc. is a Delaware corporation with its registered address at the Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

2. mCloud Technology Services Inc. (formerly known as Autopro Automation Consultants LTD.) is a Canadian corporation having a principal place of business at 777 Hornby St., Suite 600, Vancouver, BC, V6Z 1S4 Canada.

3. mCloud Technologies Corp. (formerly known as Universal mCloud Corp.) is a Canadian corporation having a principal place of business at 777 Hornby St., Suite 600, Vancouver, BC, V6Z 1S4 Canada.

4. Defendant ATB Financial ("ATB") is a Canadian company, with, upon information and belief, a place of business located at 10020 100 St NW #2100, Edmonton, AB T5J 2B8, Canada.

5. Defendant Fiera Private Debt Fund GP Inc. (formerly known as Integrated Private Debt Fund GP Inc.) ("Fiera") is a Canadian company, with, upon information and belief, a place of business located at South Tower, 200 Bay St. Suite 3800, Toronto, ON M5J 2J1, Canada.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. The parties are of diverse citizenship, and the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs.

7. Venue is proper in this district because mCloud Technologies (USA) Inc. is a Delaware corporation with its registered agent located in Wilmington, Delaware. Venue is also proper because the proposed Asset Sale Transaction that was interfered with by Defendants was between Delaware corporations and was governed by Delaware law.

**FACTS**

8. On May 14, 2021, Plaintiffs entered into an agreement with ATB for a credit facility that offered up to a maximum of $2,500,000 CAD in financing.

9. The agreement with ATB was amended and restated on January 17, 2023, and the amount of the loan was increased to $3,393,083 CAD.

10. Pursuant to the terms of the ATB agreements, Plaintiffs needed to seek the consent of ATB in order to engage in a transaction that would have resulted in the sale of any material assets of Plaintiffs, and that consent was not to be unreasonably withheld.

11. On August 7, 2019, Plaintiffs entered into a loan agreement with Fiera for a loan in the amount of $13,000,000 CAD.

12. On November 9, 2021, the agreement between Fiera and Plaintiffs was amended and restated to reflect a new interest rate and the name changes of the parties to the Fiera agreement.

13. Pursuant to the terms of the Fiera agreements, Plaintiffs needed to seek the consent of Fiera in order to engage in a transaction that would have resulted in the sale of any material assets of Plaintiffs, and that consent was not to be unreasonably withheld.

14. On or about December 2021, Plaintiffs began negotiations with a company in Saudi Arabia that would have resulted in an investment of a size that would have led to a change of control or the sale of their entire business.

15. Talks progressed to the point where in March of 2022, Plaintiffs and the Saudi Arabian company entered into a memorandum of understanding ("MOU") that outlined the details of the transaction, and the parties progressed to work on the terms of a term sheet.

16. On March 29, 2023, Plaintiffs engaged the services of Defendants to assist the special committee of independent board members to evaluate the proposed Saudi Arabian transaction.

17. The MOU valued the sale of the Plaintiffs business at $70,000,000 CAD, and payment of that sum would have resulted in the Defendants receiving a pay-out for the full amount of their loans to Plaintiffs along with interest and other payments.

18. Because of the sensitive nature of a segment of the Plaintiffs' business – which deals with the use of artificial intelligence ("AI") to produce several products that have military applications – Plaintiffs needed to comply with the regulations set forth by the Committee on Foreign Investment in the United States ("CFIUS") as a prerequisite to further proceed with any transaction that involved any Saudi Arabian buyer of its technology.

19. After a thorough review of relevant and applicable laws, rules, and regulations, it was determined that Plaintiffs needed to divest themselves of a subsidiary known as nGrain

Corporation ("nGrain") in order to be able to move forward with their transaction with the Saudi Arabian company.

20. Plaintiffs engaged several firms of consultants and financial professionals at the recommendation of Defendants to market nGrain and find a buyer in order to facilitate its sale.

21. After an extensive marketing effort, Plaintiffs were able to secure an offer for nGrain that would divest that entity and allow the transaction with the Saudi Arabian company to comply with United States banking and national security requirements in a timely and compliant manner

22. On January 31, 2024, Plaintiffs entered into a share purchase agreement that would have sold nGrain to Jonathan Young – a former employee of Plaintiffs – for $1,327,000 CAD.

23. Plaintiffs sought the consent of Defendants for the sale, which consent was required under the terms of the various lending agreements.

24. Pursuant to those lending agreements, the consent of Defendants to the sale was not to be unreasonably withheld.

25. Rather than consenting to a divestment of a small portion of the company for approximately $1.3 million CAD which would have been compliant with all relevant regulated matters in order to facilitate a transaction that would have been worth $70 million CAD, Defendants insisted on remarketing nGrain in an effort to secure a slightly higher price for the sale of that subsidiary.

26. Defendants, working in what appeared to be, and, upon information and belief, was a coordinated manner, engaged the investment banking arm of Deloitte to market nGrain – a process that took several months.

27. At the conclusion of that process, no viable or compliant offers were received for the purchase of nGrain.

28. Nevertheless, upon information and belief, Defendants, acting in concert and coordination with each other, continued to refuse to consent to the sale of nGrain to Mr. Young – which was the only viable offer received by Defendants.

29. As a result of Defendants' refusal to consent to the sale, Mr. Young suspended his offer for nGrain which ultimately expired, and the sale did not proceed.

30. Because nGrain could not be divested, the Saudi Arabian company determined that it could not move forward with its transaction and ceased working on the completion of the term sheet with Plaintiffs.

31. The value provided by the Saudi Arabian transaction was unique and could not be duplicated in the marketplace.

32. As a result of the unreasonable conduct of Defendants, Plaintiffs lost out on a $70,000,000 CAD transaction and suffered irreparable damage to their reputation in the marketplace.

33. The financial impacts of the failed transaction led to the Plaintiffs' financial condition significantly deteriorating.

34. On February 23, 2024, the Court of Alberta granted ATB's petition to place Plaintiffs' subsidiary nGrain into receivership.

35. The financial status of Plaintiffs has significantly decreased its value in the marketplace and has created significant hurdles for Plaintiffs to be able to sell the company or any subsidiary component of the company.

36. Indeed, because of Plaintiffs' financial condition, certain defense contractors in the United States were granted license-free use of Plaintiffs' technology pursuant to certain terms contained in their supply contacts.

37. On August 8, 2025, Plaintiffs entered into a Letter of Intent ("LOI") to sell certain assets of Plaintiffs to mCloudTech.AI Corp. (a Delaware corporation).

38. The LOI was for the sale of certain patents, trademarks, source code and other assets (the "Asset Sale Transaction"), and it was governed by Delaware law with venue for any dispute set in Delaware.

39. ~~T~~the LOI was promptly sent to Defendants to seek their approval for the sale. It was made clear to Defendants that the LOI expired on August 31, 2025 and that time was of the essence.

40. On August 19, 2025 Fiera informed Plaintiffs that it was willing to consent to the LOI, but only under specific terms and conditions that could not be met before the LOI expired on August 31, 2025. *See* Ex. A, attached hereto.

~~36.~~ Not only did Fiera ask for information that is irrelevant to whether the transaction closed, including, but not limited to, asking "How does the Purchaser intend to utilize the assets it intends to purchase under the LOI, and what is the projected revenue that the Purchaser intends to derive from such use?" and "Please explain why the LOI is governed by Delaware law," Fiera only gave the purchaser approximately three business days to provide the requested information.

41. Regardless, Plaintiffs attempted to comply with Fiera's demands and provided the requested information on August 22, 2025.

42. Fiera sat on this on this information until August 25, 2025 and then wrote back that that information provided by Plaintiff was insufficient. *See* Ex. B, attached hereto.

43. Fiera also stated that: "Fiera's consent to such transaction is strictly conditional on a full and final release of Fiera by the mCloud group in form and substance satisfactory to Fiera, which shall include the discontinuance of the Delaware litigation."

44. Thus, Fiera improperly conditioned its consent as a lender to Plaintiffs dismissing litigation against Fiera. This condition is completely outside the bounds of any lending agreement between Fiera and Plaintiffs.

~~37.~~ ATB waited until August 28, 2025 to respond to Plaintiffs regarding the LOI, at which point it asked for additional information and diligence that guaranteed the LOI would expire prior to ATB providing consent for the asset sale. Ex. C~~—~~, attached hereto.

45.

~~38.~~ On September 1, 2025 the LOI expired and the potential purchaser informed Plaintiffs that it would not be extending its asset purchase offer.

46.

~~39.~~ As a result of the actions of Defendants, Plaintiffs have suffered serious and irreparable financial injury.

47.

~~40.~~48. On information and belief, Defendants knew their demands would cause the LOI to expire prior to Plaintiffs' being able to satisfy any of the conditions for consent imposed by Defendants.

**~~COUNT I – BREACH OF CONTRACT – ATB~~**

~~1. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 37 as if fully set forth herein.~~

~~2. The loan agreements and related loan documents are binding agreements supported by valid, mutual consideration.~~

~~3. ATB breached the loan agreements by refusing consent to the proposed sale of nGrain to Mr. Young and unreasonably withholding its consent to the proposed sale, both of which have prevented the transaction from being consummated.~~

~~4. In the absence of ATB's breaches, the transaction with Mr. Young would have been approved and closed months ago and the CFIUS matter would have been deemed resolved.~~

~~5. As a result of ATB's breaches, Plaintiffs have suffered and will continue to suffer damages associated with the delay and loss of the transaction with the Saudi Arabian company, which had a value of $70,000,000 CAD.~~

~~6. Plaintiffs demanded that ATB comply with its obligations under the loan agreements, but ATB refused.~~

~~7.~~<u>1.</u>    ~~Due to ATB's material breaches, Plaintiffs are entitled to an award of compensatory and consequential damages in an amount to be determined at trial but believed to be not less than $70,000,000 CAD, together with interest, the costs and disbursements of this action, and reasonable attorneys' fees.~~

**~~COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – ATB~~**

~~8. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 44 as if fully set forth herein.~~

~~9. The lending agreements contained an implied covenant of good faith and fair dealing by and between the parties, which prohibited them from engaging in any activity or conduct which would prevent the other from receiving the benefits of the agreements.~~

~~10.    Plaintiffs fully performed their agreements with ATB.~~

9

11. ~~ATB had actual knowledge of Plaintiffs' transaction with Mr. Young and the Saudi Arabian company, and ATB's withholding prior written consent to the transaction prevented the transaction from moving forward and ultimately closing. Such conduct exemplified ATB's reckless and/or intentional indifference to the rights of Plaintiffs.~~

12. ~~By unreasonably withholding consent to the transaction, ATB deliberately and consciously frustrated the agreed common purpose of the agreements and disappointed Plaintiffs' reasonable expectations under the agreements.~~

13. ~~As a result of ATB's breach of the implied covenant of good faith and fair dealing and willful misconduct, ATB deprived Plaintiffs of the benefits of the agreements and Plaintiffs have been damaged by not being able to close the transaction with Mr. Young or the Saudi Arabian company.~~

14. ~~Due to ATB's breach of the implied covenant of good faith and fair dealing, Plaintiffs are entitled to an award of compensatory and consequential damages in an amount to be determined at trial but believed to be not less than $70,000,000 CAD, together with interest, the costs and disbursements of this action, and reasonable attorneys' fees.~~

## COUNT I~~II~~ – TORTIOUS INTERFERENCE – ATB

~~15.~~2.  Plaintiffs repeat and reallege the allegations of paragraphs 1 through ~~51~~ 44 as if fully set forth herein.

~~16.~~3.  A valid contractual relationship between Plaintiffs and Mr. Young existed prior to ATB's inducement of Mr. Young to not close on the transaction.

~~17.~~4.  Upon information and belief, ATB knew that Mr. Young had a valid contract with Plaintiffs.

~~18.~~5.   Upon information and belief, ATB knew that Mr. Young would let the agreement expire with Plaintiffs if Defendants did not consent to the transaction.

~~19.~~6.   But for ATB's wrongful interference, the transaction with Mr. Young would have closed and the Saudi Arabia transaction would have proceeded as it would have met compliance standards of the USA.  Indeed, Plaintiffs and Mr. Young reached agreement on all material terms and entered into an executed share purchase agreement before ATB started imposing unreasonable conditions.

~~20.~~7.   There was no legal justification for ATB to not consent to the transaction.

~~21.~~8.   In light of its obligations under the loan agreements to not unreasonably withhold their consent, ATB's withholding of consent and its imposition of commercially unreasonable conditions on the proposed transaction was malicious, outrageous and willful, and warrants an award of exemplary damages.

9. As a result of ATB's intentional and tortious interference with Mr. Young's share purchase agreement with Plaintiffs, Plaintiffs have been damaged in an amount to be determined at trial.

10.   Likewise, ATB knew that its demands relating to the LOI would cause the LOI to expire prior to Plaintiffs being able to satisfy the conditions ATB required in order to consent to the asset sale contemplated by the LOI.

~~22.~~11.   As a result of ATB's intentional and tortious interference with the LOI, Plaintiffs have been damaged in an amount to be determined at trial.

~~**COUNT IV – BREACH OF CONTRACT – FIERA**~~

~~23.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 59 as if fully set forth herein.~~

11

~~24.     The loan agreements and related loan documents are binding agreements supported by valid, mutual consideration.~~

~~25.     Fiera breached the loan agreements by refusing consent to the proposed sale of nGrain to Mr. Young and unreasonably withholding its consent to the proposed sale, both of which prevented the transaction from being consummated.~~

~~26.     In the absence of Fiera's breaches, the transaction with Mr. Young would have been approved and closed months ago.~~

~~27.     As a result of Fiera's breaches, Plaintiffs have suffered and will continue to suffer damages associated with the delay and loss of the transaction with the Saudi Arabian company, which had a value of $70,000,000 CAD.~~

~~28.     Plaintiffs demanded that Fiera comply with its obligations under the loan Agreements, but Fiera refused.~~

~~29.     Due to Fiera's material breaches, Plaintiffs are entitled to an award of compensatory and consequential damages in an amount to be determined at trial but believed to be not less than $70,000,000 CAD, together with interest, the costs and disbursements of this action, and reasonable attorneys' fees.~~

~~**COUNT V – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – FIERA**~~

~~30.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 66 as if fully set forth herein.~~

~~31.     The lending agreements contained an implied covenant of good faith and fair dealing by and between the parties, which prohibited them from engaging in any activity or conduct which would prevent the other from receiving the benefits of the agreements.~~

~~32.     Plaintiffs fully performed their agreements with Fiera.~~

~~33.    Fiera had actual knowledge of Plaintiffs' transaction with Mr. Young and the Saudi Arabian company, as well as the need to comply with USA compliance and regulations and Fiera's withholding prior written consent to the transaction prevented the transaction from closing. Such conduct exemplified Fiera's reckless and/or intentional indifference to the rights of Plaintiffs.~~

~~34.    By unreasonably withholding consent to the transaction, Fiera deliberately and consciously frustrated the agreed common purpose of the agreements and disappointed Plaintiffs' reasonable expectations under the agreements.~~

~~35.    As a result of Fiera's breach of the implied covenant of good faith and fair dealing and willful misconduct, Fiera deprived Plaintiffs of the benefits of the agreements and Plaintiffs have been damaged by not being able to close the transaction with Mr. Young or the Saudi Arabian company.~~

~~36.    Due to Fiera's breach of the implied covenant of good faith and fair dealing, Plaintiffs are entitled to an award of compensatory and consequential damages in an amount to be determined at trial but believed to be not less than $70,000,000 CAD, together with interest, the costs and disbursements of this action, and reasonable attorneys' fees.~~

**COUNT I~~V~~I – TORTIOUS INTERFERENCE – FIERA**

~~37.~~12.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 55 as if fully set forth herein.

~~38.~~13.    A valid contractual relationship between Plaintiffs and Mr. Young existed prior to Defendants' inducement of Mr. Young to not close on the transaction.

~~39.~~14.    Upon information and belief, Fiera knew that Mr. Young had a valid contract with Plaintiffs.

13

40.15.  Upon information and belief, Fiera knew that Mr. Young would let his agreement expire with Plaintiffs if Fiera did not consent to the transaction.

41.16.  But for Fiera's wrongful interference, the transaction with Mr. Young would have closed and the Saudi Arabia transaction would have proceeded as it would have met compliance standards of the USA.  Indeed, Plaintiffs and Mr. Young reached agreement on all material terms and had entered into an executed share purchase agreement before Fiera started imposing its unreasonable conditions.

42.17.  There was no legal justification for Fiera to not consent to the transaction.

43.18.  In light of its obligations under the loan agreements to not unreasonably withhold its consent, Fiera's withholding of consent and its imposition of commercially unreasonable conditions on the proposed transactions was malicious, outrageous and willful, and warrants an award of exemplary damages.

19.  As a result of Fiera's intentional and tortious interference with Mr. Young's share purchase agreement with Plaintiffs, Plaintiffs have been damaged in an amount to be determined at trial.

20.  Likewise, Fiera knew that its demands relating to the LOI would cause the LOI to expire prior to Plaintiffs being able to satisfy the conditions Fiera required in order to consent to the asset sale contemplated by the LOI.

21.  In addition, Fiera conditioned its consent to the LOI and the Asset Sale Transaction on Plaintiffs dismissing litigation against Fiera – which is an improper abuse of Fiera's status as a secured lender to Plaintiffs.

44.22.  As a result of Fiera's intentional and tortious interference with the LOI, Plaintiffs have been damaged in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants as follows:

~~A.      An adjudication that ATB breached the terms of the loan agreements and breached the covenant of good faith and fair dealing implied as matter of law in the loan agreements;~~

~~B.~~ A.   An adjudication that ATB intentionally interfered with Plaintiffs' contract with Mr. Young;

~~C.      An adjudication that Fiera breached the terms of the loan agreements and breached the covenant of good faith and fair dealing implied as matter of law in the loan agreements;~~

~~D.~~ B.   An adjudication that the Fierra intentionally interfered with Plaintiffs' contract with Mr. Young;

~~E.~~ C.   Awarding Plaintiffs damages in an amount to be proved at trial;

~~F.~~ D.   Awarding Plaintiffs exemplary damages in an amount deemed appropriate under the facts and circumstances;

~~G.~~ E.   An award of costs and expenses of this action together with reasonable attorneys' fees;

~~H.~~ F.   An award to Plaintiffs of pre-judgment and post-judgment interest on all applicable damages; and

~~I.~~ G.   An award to Plaintiffs of such further relief at law or in equity as the Court deems just and proper.

15

Dated:  <u>September 4, 2025</u><s>September 4, 2025</s><s>September 3, 2025</s>                                           STAMOULIS & WEINBLATT LLC

                                                              <u>*/s/ Stamatios Stamoulis*</u>
                                                              Stamatios Stamoulis (#4606)
                                                              Richard C. Weinblatt (#5080)
                                                              800 N. West Street, Third Floor
                                                              Wilmington, DE 19801
                                                              (302) 999-1540
                                                              stamoulis@swdelaw.com
                                                              weinblatt@swdelaw.com

                                                              *Attorneys for Plaintiff*
                                                              *mCloud Technologies Corporation*